

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
08/23/2016

| | | |
|---|---|---|
| IN RE: | § | |
| HILDA PERALES; aka HILDA ANZALDUA | § | CASE NO: 96-21401-13 |
| APOLINAR RAMIREZ JR., *et al* | § | CASE NO: 05-70268-13 |
| ROBERT LEE GREIN JR., *et al* | § | CASE NO: 10-70359-13 |
| BENJAMIN TREVINO, *et al* | § | CASE NO: 12-70012-7 |
| EFREN HERNANDEZ; aka EFREN HERNANDEZ RODRIGUEZ, *et al* | § | CASE NO: 15-70326-13 |
| Debtors | § | |

**MEMORANDUM OPINION
FINDING RAYMOND MINARDI IN CONTEMPT OF COURT
AND AWARDING CIVIL SANCTIONS**

I.   INTRODUCTION

Pending before this Court is the matter of five show cause orders, which spawned from the filing of fifteen motions by Raymond Minardi ("*Minardi*"). *See* [Case No. 96-21401-13, ECF No. 48]; [Case No. 05-70268-13, ECF No. 100]; [Case No. 10-70359-13, ECF No. 145]; [Case No. 12-70012-7, ECF No. 32]; [Case No. 15-70326-13, ECF No. 71] (collectively, the "***Show Cause Orders***"); *see also* [Case No. 96-21401-13, ECF Nos. 37, 38, and 39]; [Case No. 05-70268-13, ECF Nos. 92, 93, and 94]; [Case No. 10-70359-13, ECF Nos. 137, 138, and 139]; [Case No. 12-70012-7, ECF Nos. 25, 26, and 27]; [Case No. 15-70326-13, ECF Nos. 55, 56, and 57] (collectively, the "***Motions***").  In each of the Debtors' cases, Minardi filed the same set of three motions, which minimally varied based on the case, and each sought the same relief—namely, to reopen the case, defer the fee to reopen the case, and the execution of an asset recovery agreement.  *See generally* [Case No. 96-21401-13, ECF Nos. 37, 38, and 39]; [Case No. 05-70268-13, ECF Nos. 92, 93, and 94]; [Case No. 10-70359-13, ECF Nos. 137, 138, and 139]; [Case No. 12-70012-7, ECF Nos. 25, 26, and 27]; [Case No. 15-70326-13, ECF Nos. 55, 56, and

57]. In consideration of the objections filed, the arguments made at the hearing held on the Show Cause Orders, this Court finds that Minardi has filed multiple meritless pleadings in which he lacked standing and engaged in the unauthorized practice of law, so far as it pertains to actions governed by Fed. R. Bankr. P. 9010, and accordingly that civil sanctions are warranted to avoid future abuse of process.

## II. FINDINGS OF FACT

### A. Hilda Perales

On April 8, 1996, Hilda Perales ("*Perales*") filed her instant bankruptcy. [Case No. 96-21401-13, ECF No. 1]. The bankruptcy case was fully administered and closed on November 29, 2000. *See, e.g.*, [ECF Nos. 32-33, 35-36]. However, more than a decade later, Minardi filed three motions on behalf of Trader Sam LLC. *See also* [ECF Nos. 37, 38, and 39] (the "*Perales Motions*"). On June 24, 2016, the Court ordered that an evidentiary hearing would be conducted on July 11, 2016, which required that Minardi appear in person. [ECF No. 41]. Minardi and Perales' Counsel, Mr. Christopher Phillippe, filed several motions attempting to resolve the hearing set for July 11, 2016. *See generally* [ECF Nos. 43 and 45]. A motion to rescheduling the July 11, 2016 hearing was denied by this Court. *See generally* [ECF Nos. 44].

Minardi failed to appear at the July 11, 2016 hearing. [ECF No. 48]. (the "*Perales Show Cause Order*"). As a result, this Court denied the Perales Motions and issued the Perales Show Cause Order. [ECF No. 47]; *see also* [ECF No. 48]. In addition, this Court entered the Perales Show Cause Order and set a hearing for which Minardi must appear to show cause as to why he should not be held in contempt by failing to follow this Court's Order. [ECF No. 48]. The show cause hearing was set for August 16, 2016. *Id.* After which time, Minardi filed a motion, self-styled as "With Draw Motion to Reopen Case," that sought to "withdraw my motion to reopen

the Bankruptcy case, withdraw my motion to waive the filing fee…" [ECF No. 54]. Furthermore, Minardi filed two responses to the Perales Show Cause Order. *See generally* [ECF Nos. 56 and 58]. In each response, Minardi, *inter alia*, provided an explanation of his actions. [ECF Nos. 56 and 58]. In addition, Minardi stated that he consulted with "an attorney friend of [his]," who, according to Minardi, advised him that the worst outcome for filing motions to reopen cases is that they are denied. [ECF Nos. 56 at 1 and 58 at 1].

### B. Apolinar Ramirez Jr. and Rosalinda Ramirez

On March 23, 2005, Apolinar Ramirez Jr. and Rosalinda Ramirez (collectively, the "***Ramirez's***") filed their bankruptcy. [Case No. 05-70268-13, ECF No. 1]. The Ramirez's bankruptcy proceeded to discharge, which occurred on February 18, 2010 and was finally closed on May 4, 2010. [ECF Nos. 85, 88, and 90]. On May 31, 2016, Minardi, filed three motions in the Ramirez's case on behalf of Trader Sam, LLC, self-styled as "Motion to Reopen Case," "Motion to Defer or Waive Fee for Filing Motion to Reopen Case," and "Motion for Authority to Execute Recovery Agreement and to Approve That Agreement." [ECF Nos. 92, 93, and 94] (collectively, the "***Ramirez's Motions***"). The United States Trustee filed a response objecting, on various bases, to the Ramirez's Motions and, subsequently, the Ramirez's filed an objection that joined the United States Trustee's objection. [ECF Nos. 97 and 98]. As a result of the Ramirez's Motions having been filed, but prior to the pleadings filed by the United States Trustee and the Ramirez's, this Court set a hearing on the Motions for July 11, 2016. [ECF No. 95]. At the July 11, 2016 hearing, Minardi failed to appear when the instant case was called and, as a result, the Court denied the Ramirez's Motions and issued a show cause order. [ECF No. 99] (denying the Motions); [ECF No. 100] (the "***Ramirez's Show Cause Order***").

The Ramirez's Show Cause Order set a hearing for which Minardi must appear to show

cause as to why he should not be held in contempt by failing to follow this Court's Order. [ECF No. 100]. The show cause hearing was set for August 16, 2016. *Id.* On July 18, 2016 and July 27, 2016, respectively, Minardi filed a response to the Ramirez's Show Cause Order that, *inter alia*, provided an explanation of his actions. [ECF Nos. 106 and 110]. In addition, Minardi stated that he consulted with "an attorney friend of [his]," who, according to Minardi, advised him that the worst outcome for filing motions to reopen cases is that they are denied. [ECF Nos. 106 at 1 and 110 at 1].

### C. Robert Lee Grein Jr. and Olga Grein

On May 7, 2010, Robert Lee Grein Jr. and Olga Grein (collectively, the "***Greins***") filed their bankruptcy. [Case No. 10-70359-13, ECF No. 1]. The Greins' bankruptcy proceeded to discharge, which occurred on October 10, 2014 and was finally closed on December 8, 2014. [ECF Nos. 129, 130, 133, and 135]. On May 31, 2016, Minardi, filed three motions in the Greins' case on behalf of Trader Sam, LLC, self-styled as "Motion to Reopen Case," "Motion to Defer or Waive Fee for Filing Motion to Reopen Case," and "Motion for Authority to Execute Recovery Agreement and to Approve That Agreement." [ECF Nos. 137, 138, and 139] (collectively, the "***Greins' Motions***"). The United States Trustee filed a response objecting, on various bases, to the Greins' Motions and, subsequently, the Greins filed an objection that joined the United States Trustee's objection. [ECF Nos. 140 and 143]. As a result of the Greins' Motions having been filed and the subsequent objection by the United States Trustee, but prior to the pleading filed by the Greins, this Court set a hearing on the Motions for July 11, 2016. [ECF No. 141]. At the July 11, 2016 hearing, Minardi failed to appear when the instant case was called and, as a result, the Court denied the Greins' Motions and issued a show cause order. [ECF No. 144] (denying the Motions); [ECF No. 145] (the "***Greins' Show Cause Order***").

The Greins' Show Cause Order set a hearing for which Minardi must appear to show cause as to why he should not be held in contempt by failing to follow this Court's Order. [ECF No. 145]. The show cause hearing was set for August 16, 2016. *Id.* On July 18, 2016 and July 27, 2016, respectively, Minardi filed a response to the Grein's Show Cause Order that, *inter alia*, provided an explanation of his actions. [ECF Nos. 152 and 155]. In addition, Minardi stated that he consulted with "an attorney friend of [his]," who, according to Minardi, advised him that the worst outcome for filing motions to reopen cases is that they are denied. [ECF Nos. 152 at 1 and 155 at 1].

### D. Benjamin Trevino and Nora Trevino

On January 10, 2012, Benjamin and Nora Trevino (collectively, the "***Trevinos***") filed their bankruptcy. [Case No. 12-70012-7, ECF No. 1]. The Trevinos' bankruptcy proceeded to discharge, occurring on May 3, 2012, and was finally closed on May 25, 2012. [ECF Nos. 20 and 23]. On May 31, 2016, Minardi, filed three motions in the Trevinos' case on behalf of Trader Sam, LLC, self-styled as "Motion to Reopen Case," "Motion to Defer or Waive Fee for Filing Motion to Reopen Case," and "Motion for Authority to Execute Recovery Agreement and to Approve That Agreement." [ECF Nos. 25, 26, and 27] (collectively, the "***Trevinos' Motions***"). The United States Trustee filed a response objecting, on various bases, to the Trevinos' Motions. [ECF No. 28]. As a result of the Trevinos' Motions having been filed and the subsequent objection by the United States Trustee, this Court set a hearing on the Motions for July 11, 2016. [ECF No. 29]. At the July 11, 2016 hearing, Minardi failed to appear when the instant case was called and, as a result, the Court denied the Greins' Motions and issued a show cause order. [ECF No. 31] (denying the Motions); [ECF No. 32] (the "***Trevinos' Show Cause Order***").

The Trevinos' Show Cause Order set a hearing for which Minardi must appear to show cause as to why he should not be held in contempt by failing to follow this Court's Order. [ECF No. 32]. The show cause hearing was set for August 16, 2016. *Id.* On July 18, 2016 and July 27, 2016, respectively, Minardi filed a response to the Trevinos' Show Cause Order that, *inter alia*, provided an explanation of his actions. [ECF Nos. 37 and 40]. In addition, Minardi stated that he consulted with "an attorney friend of [his]," who, according to Minardi, advised him that the worst outcome for filing motions to reopen cases is that they are denied. [ECF Nos. 37 at 1 and 40 at 1].

### E. Efren Hernandez and Hilda Guerra Hernandez

On July 2, 2015, Efren Hernandez and Hilda Guerra Hernandez (collectively, the "***Hernandez's***") filed their instant bankruptcy. [Case No. 15-70326-13, ECF No. 1]. The Hernandez's bankruptcy proceeded like most chapter 13 bankruptcy cases until May 31, 2016, when Minardi, acting as a representative of Trader Sam, LLC, filed three motions in the instant case, self-styled as "Motion to Reopen Case," "Motion to Defer or Waive Fee for Filing Motion to Reopen Case," and "Motion for Authority to Execute Recovery Agreement and to Approve That Agreement." [ECF Nos. 55, 56, 57] (collectively, the "***Hernandez Motions***"). The chapter 13 trustee filed a response objecting, on various bases, to the Hernandez Motions and United States Trustee filed an objection to the Motions. [ECF Nos. 62 and 65]. As a result of the Hernandez Motions having been filed and the pleadings filed by the chapter 13 trustee and United States Trustee, this Court set a hearing on the Motions for June 22, 2016. [ECF No. 66]. At the June 22, 2016 hearing, Minardi failed to appear when the instant case was called and, as a result, the Court denied the Hernandez Motions and issued a show cause order. [ECF No. 69] (denying the Motions); [ECF No. 71] (the "***Hernandez Show Cause Order***").

The Hernandez Show Cause Order set a hearing for which Minardi must appear to show cause as to why he should not be held in contempt by failing to follow this Court's Order. [ECF No. 71]. The show cause hearing was set for August 16, 2016. *Id.* On July 18, 2016, Minardi filed a response to the Hernandez Show Cause Order that, *inter alia*, provided an explanation of his actions. [ECF No. 75]; *see also* [ECF No. 79] (a second response filed by Minardi). In addition, Minardi stated that he consulted with "an attorney friend of [his]," who, according to Minardi, advised him that the worst outcome for filing motions to reopen cases is that they are denied. [ECF No. 75 at 1].

## General Findings

On August 16, 2016, this Court conducted the show cause evidentiary hearings[1] (the "**Hearing**"). At the Hearing, Counsel for the Debtors and Minardi, *pro se*, appeared before this Court. Minardi repeated much of what had been provided in the responses filed in each case as his way of explaining why he should not be sanctioned. Minardi stated, as he had previously done, that he was not a licensed attorney and did not presently have representation. This Court questioned Minardi on whether he had standing to file the Motions, who stated that he had none. Minardi attempted to introduce an exhibit that purported to be a list of names he had procured, but this Court sustained objections by Counsel for the various Debtors and, thus, the exhibit was not admitted into evidence. As he had done in his responses, Minardi explained his process. Even more vexing was Minardi's claim to have consulted with an attorney friend regarding his planned strategy.

At the Hearing, Counsel for the Hernandez's, Greins, and Ramirez's, requested that this Court consider fee shifting in light of the time, expense, and frustration on behalf of the Debtors

---

[1] A single hearing was held for each of these Debtors. However, because the same issue was at bar for each of the cases, this Court has written this single memorandum opinion covering each of these Debtors.

in responding to the motions filed by Minardi.[2]  Counsel for Perales[3] and the Trevinos[4] joined in that request, noting the expense and time incurred on their respective clients.  Further, Mr. Stephen Statham, appearing for the United States Trustee, requested that this Court consider injunctive relief of prohibiting Minardi from filing a motion with any bankruptcy court in the Southern District of Texas absent an indication of standing and leave of the particular court to file a motion.

### III.  LEGAL STANDARD

In the current matters, there is a single predominate issue common to each case—whether Minardi was entitled to file his motions on behalf of Trader Sam, LLC.  Within this issue, there are two aspects to consider:  (1) standing; and (2) unauthorized practice of law by a non-attorney.  As Minardi failed to appear to defend his motions in each and every case, the issue of his standing is immaterial to the resolution of the instant matter because each motion has been denied in turn.  This Court's primary focus will be on whether Minardi engaged in the unauthorized practice of law, but first standing must be analyzed.

A party must have standing in order to seek relief in federal courts, pursuant to Article III's "case and controversy" standard.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992); *see also* U.S. Const. art. III, § 2.  In order to have standing, there are three prongs that must be demonstrated is an actual or imminent injury in fact, which is concrete and particularized, that is fairly traceable, and that it is likely that the injury can be redressed.  *Id.* at 560-61.  In bankruptcy, standing can sometimes be demonstrated by the "party in interest," which is undefined in the Code.  *See, e.g.*, *In re Rodriguez*, 2012 WL 5830639, at *1, 8 (Bankr.

---

[2] Stating that the total costs incurred or billed was approximately $1,200.00 for the Hernandez's case and $1,000 for the Greins and Rodriguez's cases.
[3] Stating that approximately $600 in total costs and attorney time had been incurred for Perales.
[4] Stating that there had been some attorney time incurred, but did not definitively provide an amount.

S.D. Tex. Nov. 16, 2012) (discussing the "party in interest" standard, as it pertains to objecting to a proof of claim). This standard illustrates the prudential principles of standing, which are:

> (1) the Plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties; (2) even when the Plaintiff has alleged redressable injury sufficient to meet the requirements of Article III, the federal courts will not adjudicate abstract questions of wide public significance which amount to generalized grievances shared and most appropriately addressed in the representative branches; and (3) the Plaintiff's complaint must fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 474-75 (1982); *see also Florida Dept. of Ins. v. Chase Bank of Texas Nat. Ass'n*, 274 F.3d 924 (5th Cir. 2001) (discussing the application of standing to a trustee or similarly situated party, e.g. the Florida Department of Insurance). Failure to demonstrate standing places the matter brought by the party beyond the scope of judicial determination. Charles Alan Wright, *et al*, 13A Fed. Prac. & Proc. Juris. § 3531 (3d ed. ); *see also Cook v. Reno*, 74 F.3d 97, 98 (5th Cir. 1996).

The Texas Supreme Court has stated "[t]o practice law in Texas, one must either be licensed by the Court or have special permission." *Unauthorized Practice of Law Comm. v. American Home Assur. Co.*, 261 S.W. 3d 24, 29 (Tex. 2008). Thus, the question is two-fold: (1) what constitutes the practice of law in Texas; and (2) what are the boundaries of the unauthorized practice of law.

This Court examines each in turn, starting with the "practice of law." In the State of Texas, the "practice of law" has been defined as:

> the preparation of a pleading or other document incident to an action or special proceeding or the management of the action or proceeding on behalf of a client before a judge in court as well as a service rendered out of court, including the giving of advice or the rendering of any service requiring the use of legal skill or knowledge, such as preparing a will, contract, or other instrument, the legal effect of which under the facts and conclusions involved must be carefully determined.

Tex. Gov. Code § 81.101(a); *see also In re Zuniga*, 332 B.R. 760, 779 (Bankr. S.D. Tex. 2005). In order to engage in the "practice of law," one must generally be a member of the state bar. Tex. Gov. Code § 81.102(a) (providing certain exceptions to the state bar membership requirement); *see also* Fed. R. Bankr. P. 9010(a); *c.f.* Tex. R. Disc. Prof. Conduct 1.12. Furthermore, the Texas Disciplinary Rules of Professional Conduct states that "a lawyer shall not practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law." Tex. Disc. R. Prof. Conduct 5.05. The Texas Disciplinary Rules of Professional Conduct also require that "a lawyer having knowledge that another lawyer has committed a violation of applicable rules of professional conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate disciplinary authority." Tex. Disc. R. Prof. Conduct 8.03(a). As such, this Court has a duty to determine whether, in any given case, a person is engaging in the unauthorized practice of law and, if so, the Court has the inherent power to take such steps as required to inhibit the unauthorized practice of law. *In re Torres*, 2015 WL 458057, at *1, *15-16 (Bankr. S.D. Tex. Jan. 23, 2015) (citing to *Unauthorized Practice Comm., State Bar of Texas v. Cortez*, 692 S.W. 2d 47, 51 (Tex. 1985)). A finding that an individual has committed the unauthorized practice of law, there can be criminal liability. *Id.* (citing to Tex. Penal Code § 38.123, which provides that a single conviction is a class A misdemeanor and multiple convictions result in a third degree felony).

Separate and apart from the considerations of unauthorized practice of law, bankruptcy courts are empowered with the ability to compel parties to comply with orders it has issued. 11 U.S.C. § 105; *see also In re Bradley*, 588 F.3d 254, 266 (5th Cir. 2009) (stating that bankruptcy

courts "do possess civil contempt power…"). The distinction of what type of contempt lying before the bankruptcy court is the dividing line between whether it may act, which it may not in the case of criminal contempt not occurring outside of its presence. *In re Bradley*, 588 F.3d at 266 (citing to *Griffith v. Oles (In re Hipp, Inc.)*, 895 F.2d 1503, 1521 (5th Cir. 1990)). The purpose of a civil contempt sanction is "to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation…" *Id.* at 263. A criminal contempt sanction is one where "the purpose of the sanction is to punish the contemnor and vindicate the authority of the court…" *Id.* Thus, a sanction that seeks to compensate parties for the actions of a contemnor, such as the failure to appear at a hearing when ordered to do so, is a civil contempt sanction because it is remedial, not vindictive of the court's authority. *Id.* at 263-64.

## IV. CONCLUSIONS OF LAW

### a. Jurisdiction

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11." *See also* 28 U.S.C. § 157(a); In re: Order of Reference to Bankruptcy Judges, General Order 2012-6 (S.D. Tex. May 24, 2012). This is a core matter for the purpose of § 157, which provides that bankruptcy judges may issue final orders or judgments where the matter is determined to be core, because as § 157 enumerates a non-exclusive list of core matters, including "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2); *see also In Re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

### b. Venue

This Court may only hear a case in which venue is proper. 28 U.S.C. §§ 1408 and 1409. Venue is proper, pursuant to § 1409, as Perales' principal place of residence is McAllen, Texas; the Ramirez's principal place of residence is Progreso, Texas; the Greins' principal place of residence is Weslaco, Texas; the Trevino's principal place of residence is San Juan, Texas; and the Hernandez's principal place of residence is La Blanca, Texas.

### c. Constitutional Authority To Enter A Final Order

This Court also has an independent duty to evaluate whether it has the constitutional authority to sign a final order. *Stern v. Marshall*, 131 S. Ct. 2594, 2618–19 (2011) (holding that bankruptcy judges are not protected by the lifetime tenure attribute of Article III judges and thus cannot perform Article III judgments by judging on "all matters of fact and law" with finality). *But see Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938–39 (2015) (holding that consent by parties obviates a potential *Stern* violation). Hence, the Court held Article III imposes some restrictions against a bankruptcy judge's power to rule with finality, but a bankruptcy court is permitted to issue final judgments and orders where the issue "arises in" or "arises under" bankruptcy, but not where the issue is merely "related to" bankruptcy. *See* § 157. However, the instant cases involves the potential issuance of sanctions against a party, which falls squarely within this Court's powers, pursuant to 11 U.S.C. § 105, and does not present a potential *Stern* issue. *In re Bradley*, 588 F.3d at 266-67 (discussing the power of a bankruptcy court to order civil sanctions against parties when "necessary and appropriate to carry out the provisions of the bankruptcy code").

### V. ANALYSIS

### a. Standing

In the instant matter, Minardi similarly filed the Motions in each case and sought similar relief in each of the three motions. *See generally* [Case No. 96-21401-13, ECF Nos. 37, 38, and 39]; [Case No. 05-70268-13, ECF Nos. 92, 93, and 94]; [Case No. 10-70359-13, ECF Nos. 137, 138, and 139]; [Case No. 12-70012-7, ECF Nos. 25, 26, and 27]; [Case No. 15-70326-13, ECF Nos. 55, 56, and 57]. In order for this Court to consider the Motions, Minardi must have and demonstrate standing. *Lujan*, 504 U.S. at 559-60; *Valley Forge Christian College*, 454 U.S. 474-75; *Florida Dept. of Ins.*, 274 F.3d at 924. Moreover, the relief sought by Minardi, insomuch as he sought employment by the authorization of the Asset Recovery Agreement, sounds in 11 U.S.C. § 327. Section 327 provides that professionals may be employed, but only certain individuals are entitled to bring that matter before the Court. *See generally* § 327; *c.f. In re Rodriguez*, 2012 WL 5830639, at *8. Minardi, however, is not one of the individuals enumerated in the Code, and, as such, fails to have standing to seek his own employment. *Compare* § 327 *with* [Case No. 96-21401-13, ECF No. 39] *and* [Case No. 05-70268-13, ECF No. 94] *and* [Case No. 10-70359-13, ECF No. 139] *and* [Case No. 12-70012-7, ECF No. 27] *and* [Case No. 15-70326-13, ECF No. 57]. As for the two remaining motions, Minardi does not have standing to bring either because he is seeking to assert the rights and interests of third parties, i.e. the chapter 7 or chapter 13 trustee, and the Debtors, but he is not asserting any rights or interests of his own. *Compare Valley Forge Christian College*, 454 U.S. 474-75 *with* [Case No. 96-21401-13, ECF Nos. 37 and 38]; [Case No. 05-70268-13, ECF Nos. 92 and 93]; [Case No. 10-70359-13, ECF Nos. 137 and 138]; [Case No. 12-70012-7, ECF Nos. 25 and 26]; [Case No. 15-70326-13, ECF Nos. 55 and 56]. Therefore, in the case of each of the Motions, Minardi has failed to demonstrate requisite standing and therefore the matter is beyond the scope of judicial determination by this Court. *Cook*, 74 F.3d 98. As such, this Court finds that each of the

Motions, if they had not already been denied, should be denied for lack of standing.

### b. Unauthorized Practice of Law in Texas

Here, Minardi filed the Motions in the Debtors cases on either May 31, 2016 or June 2, 2016. *See generally* [Case No. 96-21401-13, ECF Nos. 37, 38, and 39]; [Case No. 05-70268-13, ECF Nos. 92, 93, and 94]; [Case No. 10-70359-13, ECF Nos. 137, 138, and 139]; [Case No. 12-70012-7, ECF Nos. 25, 26, and 27]; [Case No. 15-70326-13, ECF Nos. 55, 56, and 57]. Each of the Motions was signed by Minardi and included "Trader Sam LLC" immediately below Minardi's name in the signature block. [Case No. 96-21401-13, ECF Nos. 37 at 2, 38 at 2, and 39 at 2]; [Case No. 05-70268-13, ECF Nos. 92 at 2, 93 at 2, and 94 at 2]; [Case No. 10-70359-13, ECF Nos. 137 at 2, 138 at 2, and 139 at 2]; [Case No. 12-70012-7, ECF Nos. 25 at 2, 26 at 2, and 27 at 2]; [Case No. 15-70326-13, ECF Nos. 55 at 2, 56 at 2, and 57 at 2]. The Supreme Court of Texas has plainly stated that "[e]ntities … are excluded" from practicing law. *American Home Assur. Co.*, 261 S.W. 3d at 33. Therefore, the issue is whether Minardi is qualified to represent Trader Sam LLC. *See, e.g.*, Tex. R. Disc. Prof. Conduct 1.12 (discussing an organization as a client). However, in order to properly do so, Minardi *must* be admitted to practice law in the State of Texas. Tex. Gov. Code § 81.102(a). Minardi, in the response he filed to the show cause orders, plainly admits that he is "not an attorney." [Case No. 96-21401-13, ECF Nos. 56 at 2 and 58 at 2]; [Case No. 05-70268-13, ECF No. 106 at 2 and 110 at 2]; [Case No. 10-70359-13, ECF No. 151 at 2 and 155 at 2]; [Case No. 12-70012-7, ECF Nos. 37 at 1 and 40 at 1]; [Case No. 15-70326-13, ECF Nos. 75 at 1 and 79 at 2]. The filing of the Motions satisfies the requirements set forth by the Texas legislature for the practice of law because the Motions constitute "the preparation of a pleading or other document incident to an action" and it was performed out of court. *Compare* [Case No. 96-21401-13, ECF Nos. 37, 38, and 39] *and*

[Case No. 05-70268-13, ECF Nos. 92, 93, and 94] *and* [Case No. 10-70359-13, ECF Nos. 137, 138, and 139] *and* [Case No. 12-70012-7, ECF Nos. 25, 26, and 27] *and* [Case No. 15-70326-13, ECF Nos. 55, 56, and 57] *with* Tex. Gov. Code § 81.101(a).  Therefore, this Courts finds that Minardi has engaged in the practice of law for a client, i.e. Trader Sam LLC, and such conduct was not done to further his or its own business, in the terms of defending itself against a claim or negotiating on its behalf, and he nor Trader Sam LLC, irrespective of the foregoing practice of law issues, are a party at interest in these cases.  However, this finding is made only for the purposes of evaluating Minardi's conduct in light of the Federal Rules of Bankruptcy Procedure.

Furthermore, Bankruptcy Rule 9010 permits certain parties to appear in a case and undertake certain acts, whether the person appearing is an authorized agent, attorney in fact, or proxy to perform certain acts, so long as such acts do not constitute the practice of law.  Fed. R. Bankr. P. 9010.  Minardi held himself out as a representative of Trader Sam LLC, but did not indicate whether he met any of the representative capacities.  *Compare* [Case No. 96-21401-13, ECF Nos. 37, 38, and 39] *and* [Case No. 05-70268-13, ECF Nos. 92, 93, and 94] *and* [Case No. 10-70359-13, ECF Nos. 137, 138, and 139] *and* [Case No. 12-70012-7, ECF Nos. 25, 26, and 27] *and* [Case No. 15-70326-13, ECF Nos. 55, 56, and 57] *with* Fed. R. Bankr. P. 9010(a).  However, this Court has already found that his actions met the definition of the practice of law.  Therefore, this Court finds Minardi has also violated Rule 9010 by acting on behalf of Trader Sam LLC in such a manner that constituted the practice of law.

The Fifth Circuit in *In re Bradley* stated that civil contempt can be compensatory, coercive, or remedial.  588 F.3d at 263-64 (discussing the differences between civil and criminal contempt).  Here, Counsels for the Debtors have sought compensatory sanctions against Minardi in recognition of the time and effort expended in responding to the Motions, and also the

emotional havoc wrought by the Motions upon the Debtors. The United States Trustee seeks an additional sanction, which this Court views as remedial insofar as an injunction against Minardi prohibiting future filings without leave of the court and legitimate counsel would "remed[y] the consequences of [his] defiant conduct" in these cases. *See In re Bradley*, 588 F.3d at 263-64. In this Court's view, the distinguishing factor between an injunction prohibiting Minardi from filing further motions absent leave of court and the assistance of an attorney admitted to practice in the State of Texas is that the sanction does not punish Minardi's conduct, but rather it seeks to "coerce compliance" with the Code and the Federal Rules of Bankruptcy Procedure. *Id.*; *see also Matter of Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609, 612-13 (5th Cir. 1997) (stating that "[i]f the purpose of the order is to punish the party whose conduct is in question or to vindicate the authority of the court, the order is viewed as criminal"). Accordingly, this Court finds that § 105 empowers this Court to grant the relief sought by Debtors' Counsels and the United States Trustee to issue (1) fee shifting sanctions against Minardi to compensate the parties; and (2) to injunctive sanctions against Minardi to coerce his compliance with provisions of the Code and the Federal Rules of Bankruptcy Procedure in an effort "prevent [a future] abuse of process." § 105(a); *see also In re Bradley*, 588 F.3d at 263-64; *Matter of Terrebonne Fuel and Lube, Inc.*, 108 F.3d at 612-13. Accordingly, this Court finds that the sanction requested by the United States Trustee to enjoin Minardi from filing future motions is appropriate and warranted under the circumstances, but that fee shifting is not presently warranted.

## VI.   CONCLUSION

The matters before this Court involved the vexatious conduct of Minardi, who was not a party in interest in any of the Debtors' cases. *See generally* [Case No. 96-21401-13, ECF No. 48]; [Case No. 05-70268-13, ECF No. 100]; [Case No. 10-70359-13, ECF No. 145]; [Case No.

12-70012-7, ECF No. 32]; [Case No. 15-70326-13, ECF No. 71].  In the culmination of a series of hearings and orders on the matter, this Court conducted a show cause hearing, at which Minardi finally appeared.  Minardi offered no evidence as to why he was empowered to file the Motions, and freely admitted that he was not an attorney and had filed the Motions in conjunction with his operation of Trader Sam LLC.  According to the statutes and disciplinary rules in Texas, this Court had little trouble finding that Minardi had engaged in the unauthorized practice of law in violation of Fed. R. Bankr. P. 9010.  Thus, this Court, in its duty to carry out the provisions of the Code and prevent an abuse of process, finds that the sanction sought by the United States Trustee is appropriate as a civil sanction and should be granted.  Accordingly, this Court finds that Minardi should be enjoined from filing or causing to be filed any further motions, aside from matters relating to his own personal legal affairs, which shall not include any matters of Trader Sam LLC or any future non-natural entities that may be created wherein such an entity is not a party in interest, in the United States Bankruptcy Court, Southern District of Texas McAllen, Laredo, and Brownsville Divisions unless Minardi seeks (1) leave of court prior to filing any such motion; and (2) demonstrates that he has retained counsel admitted to practice in the State of Texas and before the United States Bankruptcy Court for the Southern District of Texas.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 08/23/2016.

_____
Eduardo V. Rodriguez
United States Bankruptcy Judge